### HENRY L. HUGHES CO., Inc., v. MONARCH BRUSH CO.

(Circuit Court of Appeals, Second Circuit. November 12, 1923.)

#### No. 171.

Patents ☞328—1,364,971, for brush pad, held void for lack of invention.

    The Alexander patent, No. 1,364,971, for a brush pad, *held* void for lack of invention, in view of the prior art and prior use.

Appeal from the District Court of the United States for the Northern District of New York.

Suit in equity by the Henry L. Hughes Company, Inc., against the Monarch Brush Company. Decree for complainant, and defendant appeals. Reversed.

For opinion below, see 291 Fed. 477.

Drury W. Cooper and Thomas J. Byrne, both of New York City, for appellant.

Frank P. Curtis, of Troy, N. Y., for appellee.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MANTON, Circuit Judge. On an application filed August 24, 1915, a patent for a brush was granted to the appellee's assignor on January 11, 1921. The invention relates to a type of toilet brush having bristles mounted in a flexible elastic rubber bed. Hair brushes were exhibited

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

at the trial as products of both parties. The rubber pad is mounted and confined in convex form upon a brush back with an air chamber between the brush pad and the back. The object, as claimed, is to make the pad substantially integral and waterproof, without interfering with its flexibility and elasticity. In manufacturing, there is used a flexible sheet of vulcanized rubber perforated to receive the bristles. After the bristles are inserted in these perforations, heads are formed by bending over the ends of the bristles exposed upon the back of the sheet. The heads are then sealed or hermetically imbedded in the integral flexible rubber pad, which is formed by vulcanizing upon the rubber sheet, a rubber backing sheet. Then the thus formed integral structure is placed in convex form upon a brush back. One or more bristles may be inserted as desired. When the sheet with perforations is filled with bristles, the backing sheet used is an unvulcanized or semi-vulcanized rubber covering, and then the vulcanizing of the two sheets is done together at a temperaure somewhat less than the temperature at which the bristles supporting sheet was previously vulcanized, with respect to its flexibility and elasticity. By this process the inner ends of the bristles and heads are hermetically sealed in the integral body of soft rubber. They are said to be protected from moisture, and there is no seam or joint in the finished pad, and there is no tendency for the backing sheet to separate from the bristles supporting sheet. The claims are four in number and provide as follows:

"1. A brush pad of the class described, comprising two rubber sheets vulcanized into an integral body of soft rubber having bristles projecting from one of said sheets, said bristles being formed with heads imbedded in the integral body formed by said vulcanized together sheets.

"2. An elastic brush pad, comprising an integral body of flexible vulcanized rubber vulcanized to a greater degree on one side than on the other, and bristles projecting from the more highly vulcanized side of the pad, said bristles having heads imbedded in and wholly inclosed by the pad.

"3. brush pad of the class described, comprising two rubber sheets vulcanized into an integral body of soft rubber having bristles projecting from one of said sheets, said bristles being formed with heads imbedded in the integral body formed by said vulcanized together sheets, in combination with a supporting back whereby said pad is held in upwardly convexed form.

"4. A brush pad of the class described, comprising two rubber sheets vulcanized into an integral body of soft rubber having bristles projecting from one of said sheets, said bristles being formed with heads imbedded in the integral body formed by said vulcanized together sheets, in combination with a supporting back having walls surrounding an area of less dimensions than said pad, said pad being held in convexed form by engagement of its edges with said walls."

The appellant makes a hair brush which infringes if the patent be valid. However, we think the prior art and prior use disclosed to the patentee the method of construction and made possible this article of manufacture. The file wrapper indicates a closely contested application, and there was not before the Patent Office the Mayall patent, No. 31,615, of the prior art, and the Miller prior use. In granting the patent, the Board of Examiners asserted that no invention would be involved in the vulcanizing together of rubber sheets, but said, where the only points of attachment were in the interstices between the bristles, and where the elasticity of the backing sheet would permit

proper adhesion by the use of cement, and where all the difficulty was solved by vulcanizing the sheets, invention might be involved.

The Mayall patent was for a brush and was granted May 5, 1861. In the manufacture of the brush under this patent, a perforated vulcanized rubber sheet is used, through which heads of the bristles are projected, and there is vulcanized upon the same an unvulcanized back, so as to surround and imbed the heads of the bristles and thereby make an integral brush pad. The invention was "for a new mode of securing bristles by fixing them in a setting or backing or stock of India rubber or gutta percha." The inventor there says he "makes the backing or stock of the brush either stiff or flexible as may be desired." The specification describes the process of compounding the mixture containing rubber and sulphur and placing it in a mold. The bristles are held by a wire passing through the loops of the doubled-over bristles. The specifications further state:

"The bristles, thus placed, are then inserted in the wooden or other die-plate $f$ $f$—which serves as a follower and to protect them from the heat during the vulcanizing process, and placed in the lower half $bb$ of the mold $aa$–$bb$, as clearly shown in Fig. 4, so that the tops of the bristles shall come in contact with the plastic composition previously placed in the part $aa$ of the mold. The whole is then subjected to pressure in the molds, and heated any desirable length of time at a temperature of about 260° Fahrenheit."

A perforated sheet of rubber with the bristles set in it is thus vulcanized to the rubber-sulphur compound and an integral bristle pad is made. This construction reads upon claims 1 and 2 of the patent in suit. The Miller Company used about the same method as Mayall since 1901, years before the date of the application of the appellee's assignor. It produced a flexible brush, and in doing so used a vulcanized or cured sheet, with perforations in which were inserted bristles which were held in place by a cord. To this was cemented, over the ends of the bristles, an uncured rubber, and the entire brush was put in mold and heated, and pressure applied to vulcanize. It is immaterial that Miller's article was a bath brush. Every toilet article, such as a hair, bath, tooth, or nail brush, would satisfy the requirements of the claims. The so-called improved pad could be used for either.

The only advance made by the appellee over the Raper patent, No. 354,583, of the prior art, in which the flexible brush bed is convexed by being set in a wooden scope of less superficial area than the bed, is the manner of making the pad. In the Raper, the bristles were inserted through the perforations in a rubber pad, and their bent-over ends were then inclosed by cementing a sheet of fabric upon them. The method of bending over the heads at right angles was the same as in the patent in suit. The difficulty was in having the fabric, which was cemented on, to hold. The Mayall patent and the Miller prior use taught the art how to vulcanize on the rubber backing, instead of the fabric backing. The waterproof quality was produced by the rubber forming itself about the bristles in the perforating sheet during the vulcanizing of the pads after the insertion. The flexibility was not impaired.

In the manufacture, in order to make a tight waterproof joint, the appellant uses rubber cement—rubber dissolved in benzine—smear-

ing it on the turned-over ends of the bristles before the uncured pad is applied and vulcanized. But this use of rubber cement in practice in the rubber industry is common in vulcanizing. We think one familiar with the art at the time of the application of the appellee's assignor could produce the article of the appellee's manufacture without being accredited with inventive thought. There was no invention in what was accomplished above that which was shown by the Mayall patent and practiced by the Miller Company. It follows that the decree according invention to the patentee and infringement by the appellant must be reversed.

Decree reversed.